**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | **CASE NO. 07-12445** |
| ) | **CHAPTER 11** |
| STEADMAN L. BLAKE and ) | |
| TRYPHENA F. BLAKE ) | |
|     Debtor ) | |

## THIRD AMENDED DISCLOSURE STATEMENT OF STEADMAN L. BLAKE AND TRYPHENA F. BLAKE DATED MARCH 16, 2009

### ARTICLE I

#### A. Status

On April 20, 2007, Steadman L. Blake and Tryphena F. Blake (hereinafter referred to as the "Debtors") filed a voluntary petition for relief under Chapter 11 pursuant to Title 11, United States Code, 1101-1330, known as the Bankruptcy Code (hereinafter referred to as the "Code"), in the United States Bankruptcy Court for the District of Massachusetts, Eastern Division in Boston, Massachusetts (the "Bankruptcy Court"). In general, individuals seeking to reorganize under Chapter 11 of the Code must propose a plan of reorganization to their creditors. Before a plan of reorganization may be implemented, it must be confirmed by the Bankruptcy Court, the requirements for which include that each class of creditors accepts the proposed plan and that the plan of reorganization be feasible.

Since the filing of its Chapter 11 petition, the Debtors have remained in possession and in control of their business and have conducted their business operations as a debtor in possession.

#### B. Plan Description

This is the Debtors' Third Amended Plan of Reorganization and is a reorganizing plan. The Debtors seek to reduce the amount of the secured debt on their rental real estate to each parcel's fair market value, restate the terms of the existing mortgages to reflect reasonable commercial rates and terms, and to pay the full value of the resulting allowed secured claims. The resulting under-secured

portion of the claims of Class II to Class XI shall be considered in their own class of claims, Class XV, and the dividend paid thereto will be five percent (5%) paid through quarterly dividends commencing on the Effective Date over a five-year period.   Class XII Priority Debt holders will be paid a 100% dividend over a five-year period through quarterly payments commencing, on the Effective Date.  The Plan will be funded by the rental revenue and wages of the Debtors.

## C.  Description of Business

The Debtors, Steadman L. Blake and Tryphena F. Blake are owners of five residential rental properties having a combined total of eleven rental units with combined rental revenue of $17,600.00 per month.  The rental properties are managed and maintained by the Debtors.  Both Debtors also maintain full-time jobs, which income is also committed to the Plan.  The Debtors operate their rental business as a non-incorporated entity.

The Debtors have no full-time or part-time employees.

## D.  Purpose of Disclosure Statement

This Disclosure Statement is submitted pursuant to §1125 of the Code for the purpose of providing creditors of the Debtors with adequate information concerning the Debtors and the Plan to enable the Creditors to make an informed decision in exercising their right to vote whether to accept or reject the Plan.  Further, since the Plan contemplates certain payments to be made by the Debtors, this Disclosure Statement is also intended to provide holders of claims against the Debtors with adequate information about the Debtors, to make an informed judgment about the merits of approving the Plan.  Capitalized terms used in this Disclosure Statement shall have the meaning assigned to them in the Plan.  Terms used herein that are defined in §101 of the Code shall have the meaning assigned to them in that Section.

## E.  Disclaimers

THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  NO REPRESENTATION CONCERNING THE DEBTOR, INCLUDING THOSE RELATING TO ITS FUTURE BUSINESS OPERATIONS, OR THE VALUE OF ASSETS, ANY PROPERTY, AND CREDITORS' CLAIMS INCONSISTENT WITH ANYTHING

CONTAINED HEREIN HAVE BEEN AUTHORIZED.  ANY REPRESENTATION OR
INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE
PLAN WHICH IS OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT
SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.
NEITHER THE DEBTOR NOR ITS REPRESENTATIVES WARRANT OR REPRESENT
THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE OR WITHOUT
OMISSIONS.  THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE
STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION BY THE
BANKRUPTCY COURT FOR OR AGAINST ANY FILED PLAN.  THIS DISCLOSURE
STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO
DETERMINE HOW TO VOTE ON THE PLAN, AND NOTHING CONTAINED IN IT SHALL
CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY OR BE
ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER
PARTY OR BE DEEMED CONCLUSIVE ADVICE ON THE TAX OR OTHER LEGAL
EFFECTS OF THE REORGANIZATION ON HOLDERS OF CLAIMS.

THE STATEMENTS CONTAINED IN HEREIN ARE MADE AS OF THIS DATE
UNLESS ANOTHER TIME IS SPECIFIED, AND NEITHER DELIVERY OF THIS
DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN
CONNECTION WITH THIS DISCLOSURE STATEMENT SHALL CREATE AN
IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH
HEREIN SINCE THE DATE OF THIS DISCLOSURE STATEMENT.

**F.**   **Attachments to Disclosure Statement**

Accompanying this Disclosure Statement are copies of:

1.      The Plan of Reorganization, annexed as Exhibit 1;

2.      Liquidation Analysis, annexed as Exhibit 2;

3.      Property valuations; annexed as Exhibit 3;

4.      Statement of Financial Operations, annexed as Exhibit 4;

5.      Restatement of Mortgages, annexed as Exhibit 5;

6.      Statement of Financial Projections, annexed as Exhibit 6;

7.      11 U.S.C. §1111(b) Election Form, annexed as Exhibit 7;

8.      Ballot to accept or reject the Plan of Reorganization; annexed as Exhibit 8; and

9.      Order of the Court approving this Disclosure Statement; annexed as Exhibit 9.

G.  **Persons Entitled to Vote on Plan**

Holders of impaired claims may vote to accept or reject the Plan.  A claim is generally deemed impaired under §1124 of the Code when under the Plan of Reorganization when it does not retain its full contractual and legal rights.  Claim holders in Classes II through XIII and XV are impaired.

H.  **Voting Procedure**

After reviewing the Plan, attachments, this Disclosure Statement and exhibits, please indicate your vote on the enclosed ballot. Completed ballots must be sent to counsel for the Debtors, Timothy M.  Mauser, Esq., Mauser & Mauser, 98 North Washington  Street, Suite 305, Boston,  Massachusetts 02210 by the date indicated in the order approving this Disclosure Statement.

**ARTICLE II**
**VOTING AND CONFIRMATION**

A.  **General Requirements**

In order to confirm the Plan, the Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including that (1) the Plan has classified claims in a permissible manner; (2) the Plan complies with the technical requirements of Chapter 11 of the Code; (3) the proponent of the Plan has proposed the Plan in good faith; (4) the disclosures concerning the Plan as required by Chapter 11 of the Code have been adequate and have included information concerning all payments made or promised by the Debtors in connection with the Plan; (5) the Plan has been accepted by the requisite votes of creditors;  (6) the Plan is "feasible", meaning there is a reasonable prospect that the Debtors will be able to perform their obligations under the Plan and continue to operate its business without further financial reorganization, and (7) the Plan is in the best interest of all creditors, meaning that creditors will receive pursuant to the Plan more than they would receive in a Chapter 7 liquidation.

To confirm the Plan, the Bankruptcy Court must find that all of these conditions are met. Thus, even if the creditors of the Debtors accept the Plan by the requisite votes, the Court must make independent findings respecting the Plan's feasibility and whether it is in the best interest of the Debtors' creditors before it may confirm the Plan. The Debtors believe that the Plan fulfills all of the statutory conditions of §1129 of the Code, which are more fully discussed below.

## B.  Classification of Claims and Interests

The Code requires that a Plan of Reorganization place each creditor's claim in a class with other claims which are substantially similar. The Debtors believe that the Plan meets the classification requirements of the Code.

## C.  Voting

As a condition to confirmation, the Code requires that each impaired class of claims accept the Plan. The Code defines acceptance of a Plan by a class of claims as acceptance by holders of two-thirds in dollar amount and a majority in number of claims of that class, but for that purpose the only ballots counted are those of Creditors who actually vote to accept or to reject the Plan and are allowed to vote. Holders of claims who fail to vote are not counted as either accepting or rejecting the Plan.

Classes of claims that are not impaired under the Plan are deemed to have accepted the Plan. In this case, the Class I to XIII secured and unsecured Creditor Classes are impaired and therefore not deemed to have accepted the Plan. Acceptances of the Plan are being solicited only from those persons who hold Allowed Claims that are impaired under the Plan. An Allowed Claim is impaired if the legal, equitable, or contractual rights attaching to the Allowed Claims of the class are modified, other than by curing defaults and reinstating maturity or by payment in full in cash.

## D.  Best Interest of Creditors

Notwithstanding acceptance of the Plan as provided for in the Code by creditors of each class, in order to confirm the Plan, the Bankruptcy Court must independently determine that the

Plan is in the best interest of all classes of creditors impaired by the Plan. The best interest test requires that the Bankruptcy Court find that the Plan provides to each member of each impaired class of claims a recovery which has a value at least equal to the value of the distribution which such person would receive if the Debtors were liquidated under Chapter 7 of the Code.

## ARTICLE III
## INFORMATION PERTAINING TO DEBTORS

### A.  Debtors and Property Ownership

The Debtors, Steadman L. Blake and Tryphena F. Blake are owners of five residential rental properties having a combined total of eleven rental units of which ten are rented to tenants at market rates and one unit serves as their residence, with a combined rental revenue of $17,600.00 per month. The rental properties are managed and maintained by the Debtors, without the assistance of employees. Both Debtors also maintain full-time jobs, which income is also committed to the Plan. The Debtors operate their rental business as a non-incorporated entity.

### B.  Business of Debtors

The Debtors own, maintain, and manage five properties having a total of eleven (11) residential rental units in Dorchester, Massachusetts. The Debtors' business is unincorporated. The Debtors' residence and principal business offices are located at 121 Woodrow Avenue, Apartment 2, Dorchester, Massachusetts. The Debtors' rental units are rented to individuals under leases having a term of one year.

The Debtors currently rent 10 apartment units and occupy one unit as their residence. Occupancy is currently 100%, though one unit is behind in its rent.

Where possible the Debtors perform all required maintenance on the buildings and units. If necessary they engage contractors such as electricians and plumbers on an as-needed basis.

Prior to the commencement of the Chapter 11 Case, many of the Debtors' properties were in foreclosure, as the Debtors had suffered tenant vacancies and mortgage payment increases (the Debtors' mortgages are adjustable rate mortgages) which in combination prevented the Debtors

from meeting their mortgage obligations.  The specter of foreclosures on the properties, even
with the filing of a Chapter 11 Petition remains without the adjustment of the mortgages to fixed
rate fair market value and current interest rates.  Unless the mortgages are adjusted the properties
will be foreclosed on as the Debtors are unable to meet all current mortgage payments.  Further,
the fall in the Debtors' properties' values due to the current real estate value crisis makes
refinancing the properties' mortgages highly unlikely at this time.  However, provided the
properties' mortgages can be recast to fixed rate mortgages of reasonable term and rate, to the
properties' current market value, pursuant to 11 U.S.C. §506(b),  the Debtors can operate
profitably and pay a dividend to unsecured claimants.

## C.  Past Financial Problems

The principal cause of the Debtors filing for the protection afforded by Title 11 of the Code
was the Debtors' inability to meet their mortgage payments as a result of unit vacancies and
increasing mortgage payments due to the Debtors' adjustable rate mortgages, which were placed
on the Debtors' property on purchase.  Since the filing of the Chapter 11 Case, the Debtors have
restored the rental units occupancy rate to 100%.

## D.  Post-Petition Operations

Since the Chapter 11 filing in April of 2007 the Debtors have regained full occupancy, have
maintained their properties, and have a cash flow in excess of $16,000.00 per month.  However,
the Debtors' current situation given the required payments on their current adjustable rate
mortgages is unsustainable.  Property valuations obtained during the course of the Chapter 11
Case have established that all of the Debtors' properties are carrying mortgages far beyond the
properties' market value and that payments based upon the mortgages' principal balances cannot
be maintained even given the Debtors' current enviable occupancy rate.  As a result the Debtors
propose to commit all of their current operating revenue and employment revenue, after
operating and living expenses to their current mortgage debt, adjusted to the properties' current
fair market value at a fixed rate of  five percent per annum.  See Statement of Financial
Operations and Statement of Financial Projections annexed hereto as Exhibits 4 and 6.

### E. **Payments to Insiders**

The Debtors occupy one unit at 121 Woodrow Avenue, and do not receive direct compensation from their rental operations.

### F. **Property and Mortgages Description**

The Debtors own five multifamily properties.  Following is a description of each Property's  location, fair market value financing and treatment under the Plan.

| | Location | Units | Value/ Class | Mortgage Balance |
|---|---|---|---|---|
| 1. | 121 Woodrow Ave. Dorchester, MA | 2 Units | $ 250,000 | |
| | First Mortgage | Washington Mutual | Class II | $ 355,051.00 |
| | Second Mtg. | GMAC | Class III | $  64,532.00 |
| | | | **Total** | $ 419,583.00 |
| 2. | 11 Claybourne St. Dorchester, MA | 2 Units | $ 250,000 | |
| | First Mortgage | Ocwen | Class IV | $ 447,828.00 |
| | Second Mortgage | Home Eq. Financing | Class V | $  24,135.81 |
| | | | **Total** | $ 471,963.81 |
| 3. | 7 Sayward St. Dorchester, MA | 2 Units | $ 200,000 | |
| | First Mortgage | First Franklin | Class VI | $ 332,800.00 |
| | Second Mtg. | First Franklin | Class VII | $  82,749.00 |
| | | | **Total** | $ 415,549.00 |
| 4. | 10-12 Joseph St. Dorchester, MA | 2 Units | $ 250,000 | |
| | First Mortgage | Saxson Mtg. Co. | Class VIII | $ 424,309.05 |
| | Second Mtg. | Saxson Mtg. Co. | Class IX | $ 109,836.19 |
| | | | **Total** | $ 524,145.24 |

| 5. | 9 Claybourne St.<br>Dorchester, MA | 3 Units | $ 195,000 | |
|----|----|----|----|----|
| | First Mortgage | ASC | Class X | $ 457,199.19 |
| | Second Mtg. | EMC | Class XI | $  87,665.50 |
| | | | **Total** | $ 544,864.69 |

**Summary**

| Total Fair Market Value | $ 1,145,000.00 |
|----|----|
| Total Mortgages | $ 2,376,105.74 |
| Resulting Unsecured  Mortgage Claims | $ 1,231,105.74 |

## G.  11 U.S.C. §1111(b) Election

Section 1111(b) of the United States Bankruptcy Code provides in part that a claim secured by a lien on property of an estate, such as a mortgage, shall be allowed or disallowed under §502 of the Bankruptcy Code "… unless (1) the class to which such claim is a part elects… application of paragraph 2 of this subsection…" Subsection (2) of §1111(b) provides that, "If such an election is made then notwithstanding §506(a), such claim is a secured claim to the extent such claim is allowed."

As a result, a lien holder belonging to a secured class, such as mortgage holders whose under-secured mortgage claims are affected by the Debtors' proposed plan, may elect out of the Debtors' Class XV under-secured distribution proposal of five percent (5%) of the allowed under-secured claim in order to retain their right to future appreciation on their underlying collateral, if any, upon sale or refinancing of the affected collateral.  Those Class XV members who elect out of the Debtors' Class XV payment proposal will not receive any payment on their deemed under-secured claim but will in the alternative preserve their lien on the property.

Each potential Class XV member will receive an 11 U.S.C. §1111(b)(2) Election Form, which must be returned to Debtors' counsel prior to the Court-ordered return date.  Those potential Class XV members who do not return the §1111(b)(2) Election Form will be treated as not having elected §1111(b)(2) treatment and shall be deemed to have waived the §1111(b) election and will be entitled to Class XV distributions.

## ARTICLE IV
## DESCRIPTION OF PLAN

THE FOLLOWING IS A SUMMARY OF THE SIGNIFICANT ELEMENTS OF THE PLAN. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN AND THE ATTACHMENTS THERETO.

### A. General Description

This is a Reorganizing Plan. The principal facet of this Plan of Reorganization is to recognize as secured debt so much of the current mortgages on each property as secured to the extent of each property's current fair market value. That portion of the current mortgages that are not recognized as secured debt will be treated, to the extent the affected mortgage holder has not elected §1111(b) status, as a separate class, labeled Class XV, as unsecured debt and be paid a dividend of five percent (5%) by 20 quarterly payments commencing on the Effective Date of the Plan, paid pro-rata and the under-secured portion of the mortgage will be deemed terminated. Those mortgage holders with under-secured claims electing §1111(b)(2) status will retain their lien on such under-secured portion of their mortgage, but will not receive any distribution as a Class XV claimant. Each secured claimant's restated mortgage shall be restated to a 30-year mortgage bearing a fixed interest rate of 5 percent, with payments commencing on the Effective Date of the Plan. Priority Creditors shall be paid the full amount of their claims, by 20 quarterly payments commencing on the Effective Date of the Plan. Class XIII General Unsecured Debt holders will be paid a dividend of twenty percent (20%) via a ten percent payment paid on each allowed claim on the Effective Date and payment of 2.5% of each allowed claim on each of the four anniversary dates thereafter.

### B. Designation of Classes of Claims

1.      Class I consists of Allowed Administrative Claims which are estimated to be approximately $27,500.00 as of the date of this Disclosure Statement. The Plan contemplates paying the following items in full on the Plan Confirmation Date:

Timothy M. Mauser, Esq.; Court approved bankruptcy counsel; $ 27,500.00.

The foregoing estimated payments to be made to Court approved professionals are subject to the approval of the Bankruptcy Court prior to payment. The amount payable to the Debtors' counsel does not reflect the $7,500.00 retainer (net of the filing fee) previously paid to Debtors' counsel. The Office of the U.S. Trustee's administration fees are also to be paid in full on the Effective Date, as are any other allowed administrative claims.

2.    Class II through Class XI consist of the claims of the Debtors' current mortgage holders, whose secured claims are subject to modification pursuant to 11 U.S.C. §506(b) and 11 U.S.C. §1129(b)(2)(A)(i). As of this date, the Debtors have identified potentially allowed secured claims totaling $1,145,000.00 and resulting under-secured claims from the reduction of such secured claims totaling $1,231,105.74. The Allowed Secured Claims of Classes II to XI Claims will retain the liens securing such claims to the extent of the allowed amount of such claim, and will receive deferred cash payments equal to at least the allowed amount of such claims. The resulting under-secured claims forming the so-called "cram down class" will be placed in a separate class and offered a choice between a total dividend under the Plan of Reorganization of five (5%) percent of their resulting under-secured claims and losing their lien on the under-secured amount of their mortgage lien or electing to forgo the payment in return for retaining their lien. Class XV claims which do not elect to forgo payment will be paid by an initial cash payment on the Effective Date, and quarterly cash payments thereafter for five years. Class XV claim holders who participate in the payment will have the under-secured portion of the mortgage lien terminated. Class XV claim members who elect out to retain their under-secured lien but will not receive any payment on the under-secured portion of their mortgage (see paragraph 6 below, Class XV, of this subsection). Classes II to XI are impaired

3.    Class XII consists of the Allowed Priority Claims of the City of Boston for real estate taxes and water incurred pre-petition. Allowed Class XII Claims will be paid 100% of their claims. Payments to Class XII creditors will be made by making an initial cash disbursement on the Effective Date, and quarterly cash payments thereafter for five years, all payable pro-rata. Class XII is impaired. Class XII Priority Claims are estimated to be $30,785.00.

4.  Class XIII consists of Allowed General Unsecured Creditors of the Debtors. Allowed General Unsecured Creditors will be will be offered a dividend of twenty percent (20%) via a ten percent payment paid on each allowed claim on the Effective Date and payment of 2.5% of each allowed claim on each of the four anniversary dates thereafter. Class XIII is impaired. Class XIII unsecured claims are estimated to be $ 65,144.27.

5.  Class XIV equity holders, the Debtors, will retain their equity interest in their ,property but will receive no distributions. This Class is unimpaired. Steadman Blake and Tryphena Blake will manage and maintain their properties and will to the extent necessary contribute so much of their income as is necessary to maintain the Plan.

6.  Class XV consists of those Class II through Class XI mortgage holders whose lien is under-secured. The Debtors have calculated that the total amount of under-secured claims total $ 1,231,105.74. Each under-secured claim holder will be offered a choice between receiving a five percent (5%) dividend to be paid in twenty (20) quarterly payments commencing on the Effective Date and having the under-secured portion of their lien terminated or retaining their under-secured lien and forgoing the offered dividend.

Class XV members who wish to retain their under-secured lien must elect pursuant to 11 U.S.C. 1111(b)(2) to opt out of the offered Class XV dividend. Those class members who wish to elect not to receive the offered dividend and retain their lien on the under-secured portion of their claim must file the enclosed 11 U.S.C. §1111(b) Election Form pursuant with this Bankruptcy Court's Order (see Exhibit 9).

Class XV members who elect §1111(b)(2) treatment will not receive any payment on the under-secured portion of the mortgages, until the Debtors sell or refinance their collateral.


C. **Treatment of Allowed Administrative Claims**

Allowed Administrative Claims (designated as Class I Claims) shall be paid in full, on the latter of the Plan Confirmation Date or the date they are allowed by an Order of the Bankruptcy Court. The payments contemplated by the Plan shall constitute full satisfaction of allowed Administrative Claims. Administrative Claims include any post-petition, unpaid bills or charges incurred in the ordinary course of business and the fees and expenses allowed to professionals

employed upon Court authority to render services to the Debtor during the course of the Chapter 11 Case.

The sole professional engaged during the pendency of this bankruptcy case to date is Timothy M. Mauser, Esq. and Mauser & Mauser, bankruptcy counsel for the Debtors. Charles Metrakas may be engaged as a licensed appraiser to testify as to valuation if necessary. Any Professional fees incurred by the Debtors subsequent to the filing of the Debtor's Chapter 11 petition are administrative claims payable by the Debtors pursuant to their Plan of Reorganization.

The Debtors have, in the ordinary course of their business, not incurred trade debt as of the date of the Disclosure Statement beyond its normal operating requirements. Any trade debt of the Debtor is for normal purchases and technician service and is paid in accordance with normal terms. All such debt will be current at the time of Plan confirmation. As the Debtors make full payment of all debt of this type within thirty days of incurrence, no special provision is made for the payment of this debt in the Debtor's Plan of Reorganization.

The Debtors expect to be current with respect to all debt to taxing authorities such as employment taxes which could be considered an administrative claim. As the Debtors contemplate full payment of all debt of this type within thirty days of its incurrence, no special provision is made for the payment of this debt in the Debtors' Plan of Reorganization.

In order to be compensated, all professionals related to this case must apply to the Bankruptcy Court for compensation and will be paid the amount which the Bankruptcy Court allows. This Disclosure Statement was prepared and submitted at a point anticipated to be approximately thirty days prior to the date proposed for Confirmation and more work by the Debtors' bankruptcy counsel may be rendered to the Debtor. Nonetheless, Debtors' counsel does not expect total professional fees and costs to exceed $27,500.00.

Normally, fees for professional persons awarded under §330 of the Code, which constitute administrative expenses entitled to priority, would be paid in full after Plan confirmation, unless other arrangements are made between the claimant and the Debtor.

The Debtors estimate that the Bankruptcy Court may allow total compensation for bankruptcy counsel and appraisal testimony services of $27,500.00 for fees and expenses for

services in this Chapter 11 case, which would normally be paid in full upon confirmation of this case. Debtors' counsel's total fees and expenses are estimated to be approximately $27,500.00 of which $8,539.00 has been received as a retainer.

### D.  Treatment of Secured Claims (Classes II to IX)

1.  Class II, the secured claim of Washington Mutual Bank, holder of the First Mortgage on 121 Woodrow Avenue, Dorchester, MA will be reduced in value from approximately $355,051.00 to the property's fair market value of $250,000.00. The restated Class II Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class II Mortgage will be paid in full via equal monthly payments over a 30-year term, at a fixed five percent interest rate. The under-secured portion of the Class II mortgage will be treated as Class XV unsecured debt, and the resulting unsecured claim of $ 132,800.00 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

2.  Class III, the secured claim of GMAC, holder of the Second Mortgage on 121 Woodrow Avenue, Dorchester, MA will be reduced in value from approximately $64,532.00 to zero, as the entire amount of the Class III mortgage is under-secured. The Class III Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under-secured portion of the Class III claim will be treated as Class XV unsecured debt, and the resulting unsecured claim will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

3.  Class IV, the secured claim of Ocwen Bank holder of the First Mortgage on 11 Claybourne Street, Dorchester, MA will be reduced in value from approximately $447,828.00 to the property's fair market value of $ 250,000.00. The restated Class IV Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class IV Mortgage will be paid in full via equal monthly payments over a 30-year term, at a fixed five percent interest rate. The under-secured portion of the Class IV mortgage will be treated as unsecured debt, considered in Class XV, and the resulting unsecured claim of $67,828.00, will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

4. Class V, the secured claim of Home Eq. Financing, holder of the Second Mortgage on 11 Claybourne Street, Dorchester, MA will be reduced in value from approximately $24,135.81 to zero, as the entire amount of the Class V mortgage claim is under-secured. The Class V Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under-secured portion of the Class V claim will be treated as Class XV unsecured debt, and the resulting unsecured claim of $24,135.81 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

5. Class VI, the secured claim of First Franklin Bank, holder of the First Mortgage on 7 Sayward Street, Dorchester, MA will be reduced in value from approximately $332,880.00 to the property's fair market value of $ 200,000.00. The restated Class VI Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class VI Mortgage will be paid in full via equal monthly payments over a 30-year term, at a fixed five percent interest rate. The under-secured portion of the Class II mortgage will be treated as Class XV unsecured debt, and the resulting unsecured claim of $ 132,800.00 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

6. Class VII, the secured claim of Franklin Bank, holder of the Second Mortgage on 7 Sayward Street, Dorchester, MA will be reduced in value from approximately $82,749.00 to zero, as the entire amount of the Class VII mortgage claim is under-secured. The Class VII Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under-secured portion of the Class VII claim will be treated as Class XV unsecured debt, and the resulting unsecured claim of $82,749.00 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

7. Class VIII, the secured claim of Saxon Mortgage Company, holder of the First Mortgage on 10-12 Joseph Street, Dorchester, MA will be reduced in value from approximately $424,309.05 to the property's fair market value of $ 250,000.00. The restated Class VIII Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class VIII Mortgage will be paid in full via equal monthly payments over a 30-year term, at a fixed five percent interest rate. The under-secured portion of the Class VIII mortgage will be treated as Class XV unsecured debt, and the resulting unsecured claim of $ 174,309.05 will

receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

8. Class IX, the secured claim of Saxon Mortgage, holder of the Second Mortgage on 10-12 Joseph Street, Dorchester, MA will be reduced in value from approximately $109,836.19 to zero, as the entire amount of the Class IX mortgage claim is under-secured. The Class IX Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under-secured portion of the Class IX claim will be treated as Class XV unsecured debt, and the resulting unsecured claim of $109,836.19 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

9. Class X, the secured claim of ASC, holder of the First Mortgage on 9 Claybourne Street, Dorchester, MA will be reduced in value from approximately $457,199.19 to the property's fair market value of $ 195,000.00. The restated Class X Mortgage terms will retain its First Mortgage position to the extent of the property's value. The restated Class X Mortgage will be paid in full via equal monthly payments over a 30-year term, at a fixed five percent interest rate. The resulting under-secured portion of the Class X mortgage will be treated as Class XV unsecured debt, and the resulting unsecured claim of $ 262,000.00 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

10. Class XI, the secured claim of EMC, holder of the Second Mortgage on 9 Claybourne Street, Dorchester, MA will be reduced in value from approximately $87,665.50 to $0.00, as the Class XI mortgage claim is under-secured. The Class XI Mortgage will be eliminated pursuant to the Chapter 11 Plan. The under-secured portion of the Class XI claim will be treated as Class XV unsecured debt and the Class XI unsecured claim of $96,892.00 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

## E.  Treatment of Priority Claims

Class XII consists of the Allowed Priority Claims of the City of Boston for real estate taxes and water and sewer charges incurred pre-petition. Allowed Class XII Claims will be paid 100% of their allowed claims. Payments to Class XII priority creditors will be made by making an initial cash disbursement on the Effective Date, and quarterly cash payments thereafter for five years, all payable pro-rata. Class XII is impaired. Total Class XII Priority Claims are estimated to be $30,785.00.

## F.  Treatment of Allowed Unsecured Claims

Class XIII consists of the claims of general unsecured creditors and trade creditors of the Debtors.  As of this date, the Debtors have identified potentially allowed unsecured claims of the totaling $ 65,144.27.  Allowed Class XIII General Unsecured Debt holders will be paid a dividend of twenty percent (20%) via a ten percent payment paid on each allowed claim on the Effective Date and payment of 2.5% of each allowed claim on each of the four anniversary dates thereafter. This Class is impaired.

## G.  Treatment of Equity Holders

Class XIV consists of the Debtors as equity holders of the Estate's assets.  Both Steadman Blake and Tryphena Blake will retain their ownership interest in the Estate's assets but will receive no Plan distribution. This Class is not impaired.

## H.  Treatment of Under-Secured Claims

Class XV consists of those Class II through Class XI mortgage holders whose lien is under-secured.  The Debtors have calculated that the total amount of under-secured claims total $ 1,231,105.74.  Each under-secured claim holder will be offered a choice between receiving a five percent (5%) dividend to be paid in twenty (20) quarterly payments commencing on the Effective Date and having the under-secured portion of their lien terminated or retaining their under-secured lien and forgoing the offered dividend.

Class XV members who wish to retain their under-secured lien must elect pursuant to 11 U.S.C. 1111(b)(2) to opt out of the offered Class XV dividend.  Those class members who wish to elect not to receive the offered dividend and retain their lien on the under-secured portion of their claim must file the enclosed 11 U.S.C. §1111(b) Election Form pursuant with this Bankruptcy Court's Order (see Exhibit 9).

Class XV members who elect §1111(b)(2) treatment will not receive any payment on the under-secured portion of their mortgages, until such time as the Debtors sell or refinance the collateral.

### I. **Disbursements**

The Debtors will serve as distribution agent of all payments to be made.  The distributions for Class I will be made on the Plan Confirmation Date. The distributions for allowed Class II  to Class XI Claims will commence (30) days from the Confirmation Date of this Plan of Reorganization, the Effective Date, for both the secured and unsecured portion of such claims.

The Plan is premised upon the Debtors' belief that both the secured and unsecured creditors will receive a greater percentage of their claims under the Plan than they would upon a forced liquidation of the business under Chapter 7 of the Bankruptcy Code.  See Exhibit 2, Liquidation Analysis.

### J. **Retention of Control**

The Plan provides that the Class XIV  Claim holders,  Steadman and Tryphena Blake, shall retain their equity interest in the Chapter 11 Bankruptcy Estate's property.

### K. **Plan Funding and Working Capital**

This is a boot strap plan and is predicated upon the Debtors ability to maintain the rental income stream of their rental properties, and thereby making the proposed Plan payments to both secured, priority and unsecured claim holders.  It is anticipated that where necessary the Debtors' will contribute their personal employment income to meet Plan payments as proposed herein; however any such contributions by the Debtors will be considered further contributions to capital and not extensions of credit.

### L. **Restated Mortgages**

This Plan of Reorganization recognizes as secured debt, so much of the current mortgages on each property that are secured to the extent of each property's current fair market value, that portion of the current mortgages that are as a result not recognized as secured will be treated as unsecured debt in Class XV, reserved solely for such claims, and be paid a dividend as unsecured creditors over the life of the Plan.  Each remaining secured claimant's mortgage shall be restated

to a 30-year mortgage bearing a fixed interest rate of 5 percent, with payments commencing on the Effective Date of the Plan. All other terms of the existing mortgages will remain the same unless specifically altered by this Plan. The Allowed Secured Claims of Classes II to XI Claims will retain the liens securing such claims to the extent of the allowed amount of such claim, and will receive deferred cash payments equal to at least the allowed amount of such claims. Class II to Class XI Claim Holders, whose mortgages have been affected by the Plan, shall amend such mortgages that remain pursuant to the terms contained in this Chapter 11 Plan of Reorganization within 30 days of Plan Confirmation. The Class II to Class XI Claim Holders, whose mortgages have been deemed totally under-secured shall file mortgage releases within 30 days of Plan Confirmation.

## M. **Other Provisions**

On Confirmation, all property of the estate shall be retained by the Debtor. Any other interests in the Debtor's property, if any, shall be retained by the holders thereof, free and clear of any claims, liens and encumbrances.

## N. **Retention of Jurisdiction**

Following the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Case for the following limited purposes:

1. To take any action to resolve any disputes arising out of or relating to any Claim; to determine other issues presented by or arising under the plan, and to take any action to resolve any disputes of creditors with respect to their Claims;

2. To construe and to take any action to enforce the Plan, issue such orders as may be necessary for the implementation, execution and consummation of the Plan, and determine all other matters which may be pending on the Confirmation Date;

3. To determine any and all applications pending on the Confirmation Date or thereafter for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

DWLIBDB\228100.1 9802/00

19

4.  To determine all applications, adversary proceedings, contested matters and other litigated matters pending on the Effective Date;

5.  To determine such other matters and for such other purposes as may be provided in the Confirmation Order; and

6.  To modify the Plan but only in accordance with the Plan or to remedy any apparent non-material defect or omission in the Plan, or to reconcile any non-material inconsistency in the Plan so as to carry out its intent and purposes.

The Effective Date shall be thirty (30) days after confirmation, or at the conclusion of all appeals from an order confirming this Plan.

**O.  Provision for Disputed Claims:**

The Debtors may object to the allowance of any Claim within 30 days of the Confirmation Date, by filing an objection with the Bankruptcy Court and serving a copy thereof on the holder of the Claim, in which event the Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Company will make any payments in respect of such Allowed Claim in accordance with and limited by the Plan.

**P.  Administrative Expenses and Other Post Petition Claims**

All unsecured obligations incurred by the Debtor in the ordinary course of business in the Chapter 11 case shall be paid in full at the time of Confirmation, as and when due in the ordinary course.

**Q.  Trustees Fees**

The Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6) until the close of the case.  After confirmation, the Debtor will serve the United States Trustee with a monthly financial report for each month or portion thereof the case remains open.  The monthly financial report shall include the following:

1.  A statement of all disbursements made during the course of the month, whether or not

pursuant to the plan;

    2.  A summary, by class, of amounts distributed or property transferred to each recipient under the plan and an explanation of the failure to make any distributions or transfers of property under the plan;

    3.  Debtors' projections as to their continuing ability to comply with the terms of the plan;

    4. A description of any other factors which may materially affect the Debtor's ability to consummate the plan; and

    5.  Estimated date when an application for final decree will be filed with the court or in the case of the final monthly report, the date the decree was filed.

## ARTICLE V
## <u>LIQUIDATION VALUATION</u>

    To calculate what the unsecured creditors would receive if the Debtor were liquidated, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtors' assets if the Chapter 11 case were converted to a Chapter 7 case under the Code and the assets were liquidated by a trustee in bankruptcy (the "Liquidation Value"). The Liquidation Value would consist of the net proceeds from the disposition of the assets of the Debtor. Since the assets of the Debtor have been valued at approximately $50,000.00 for liquidation purposes, after subtracting the net realizable value of the Administrative and Priority Claims as set forth in Exhibit "2" attached hereto, nothing would remain to be paid to unsecured creditors.

    The Plan of Reorganization contemplates paying the Class I Administrative Claims in full at Plan Confirmation; Classes II to XI will receive the full value of their allowed secured claims over 30-years commencing on Plan Confirmation; allowed unsecured claims of Classes II, III, IV, V, VI, VII, VIII, IX and XI will receive dividend of five (5%) over a five year period paid quarterly commencing the effective date and considered Class XV; Class XII Priority Claims will receive a dividend of 100 percent paid quarterly over a five year period commencing on the Effective Date and the Class XIII Unsecured Claims Class shall receive a dividend of twenty

percent (20%) via a ten percent payment paid on each allowed claim on the Effective Date and payment of 2.5% of each allowed claim on each of the four anniversary dates thereafter.

It is clear all Creditor Classes will fare far better under Chapter 11 than under Chapter 7 liquidation, as it is likely that much lower distributions would likely be made to all Class holders, secured or unsecured, if the Case were converted to a Chapter 7 Case and the Debtors' assets were liquidated by foreclosure. Further, any amount of Liquidation Value available would be diminished by the costs and expenses of the foreclosures, as well as other administrative expenses that would be incurred by the Debtor's hypothetical Chapter 7 estate.

The Debtors' costs of liquidation under Chapter 7 would include the compensation of the Chapter 7 Bankruptcy Trustee, as well as of counsel and of other professionals retained by the trustee. All unpaid expenses incurred by the Debtors during their Chapter 11 case (such as compensation for attorneys, financial advisors and accountants) which are allowed in the Chapter 7 proceeding, together with litigation costs and claims arising from the operation of the Debtors during the pendency of the Chapter 11 reorganization and Chapter 7 liquidation cases would be entitled to priority over the unsecured creditors. These claims would be treated as Administrative Claims and must be paid in full out of the liquidation proceeds before any sums would be available to pay general unsecured pre-petition claims.

The Debtors believe that the Plan is in the best interests of all creditors. Thus, a conversion to Chapter 7 with the additional costs noted above would provide no greater return to unsecured creditors than the Plan would provide.

## ARTICLE VI
## FEASIBILITY

The Bankruptcy Code requires as a condition to Confirmation that the Bankruptcy Court find liquidation of the debtor or the need for further reorganization is not likely to follow after Confirmation. The Plan's distributions to creditors depend upon the success of the Debtors' operations. The Debtors believe Debtors will have sufficient funds from operations to allow them to fund all payments pursuant to this Plan of Reorganization and provide sufficient working capital to provide for profitable future operations. The Plan requires the payment upon the Plan

Confirmation of approximately $ 20,000.00 to satisfy the Administrative Claims, and upon the
Effective Date, $17,227.60 (see Exhibit 4 Statement of Financial Operations) as initial payments
to Class II, Class IV, Class VI, Class VIII, Class X and Class XI holding restated secured claims
pursuant to the restated mortgages, and initial payments to Class XV holding non-§1111(b)(2)
electing allowed under-secured claims; and payments payable to members of the Class II Priority
Claim Holder, and Class XIII Unsecured Claim Holders.   The foregoing payments will be made
from the Debtors' existing cash flow.

## ARTICLE VII
## DEBTORS' OPERATION AS DEBTORS IN POSSESSION

During the pendency of this case, the Debtors have operated at a positive cash flow; at this
point, the Debtors believe that they will have sufficient funds available from operations and if
necessary capital contributions from the Debtors' employment income.

## ARTICLE VIII
## CONCLUSION

The Debtors respectfully suggest that the proposed Plan of Reorganization is feasible and in
the best interest of each class of creditors.  The Plan is the result of effort by the Debtor to
provide creditors with a meaningful dividend of five percent (5%) percent of allowed under
secured mortgage claims and twenty percent (20%) to general unsecured claimants and further
provides full payment to secured claim holders and administrative obligations.  The only
alternative to the proposed Plan of Reorganization is liquidation of the Debtors' assets, which the
Debtors believe would greatly reduce the dividend to both secured, under secured and unsecured
Claim Holders.  Therefore, the Debtors believe that the proposed Plan is clearly preferable to
liquidation.

A BALLOT IS ENCLOSED HEREWITH: YOU SHOULD VOTE TO ACCEPT OR
REJECT THE PLAN UPON THAT BALLOT AND RETURN IT TO TIMOTHY M. MAUSER,
ESQ., MAUSER & MAUSER, SUITE 305, 98 NORTH WASHINGTON STREET, BOSTON,
MASSACHUSETTS 02114.

Respectfully submitted,
Steadman L. Blake and
Tryphena F. Blake
By their attorneys,

*/s/ Timothy M. Mauser*
Timothy M. Mauser, Esq. BBO #542050
Mauser & Mauser
98 North Washington Street
Boston, Massachusetts 02114
E-mail: tmauser@mauserlaw.com

Dated:  March 16, 2009