EXHIBIT I

PLAN OF REORGANIZATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>STEADMAN L. BLAKE and<br>TRYPHENA F. BLAKE<br>    Debtor | CASE NO. 07-12445<br>CHAPTER 11 |

## THIRD AMENDED PLAN OF REORGANIZATION OF STEADMAN L. AND TRYPHENA F. BLAKE DATED MARCH 16, 2009

Steadman L. Blake and Tryphena F. Blake (hereinafter, the "Debtors"), propose the following Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code, §1121(a):

## ARTICLE I
## DEFINITIONS

"Code" shall mean the Bankruptcy Reform Act of 1978 as modified in Title 11, United States Code.

"Confirmation Date" shall mean the date on which the Plan is confirmed by Order of the Court.

"Court" shall mean the United States Bankruptcy Court for the District of Massachusetts, Western Division.

"Debtors" shall mean Steadman L. Blake and Tryphena F. Blake.

"Effective Date" is herein defined as thirty (30) days from the date upon which the Order of Confirmation of this plan or any amended plan of reorganization filed by the Debtors is entered by the Court assuming that no appeal from said Order of Confirmation is filed. If there is an appeal from the Order of Confirmation, the Effective Date will be thirty (30) days after the date on which all appeals have been withdrawn, dismissed or otherwise completed, or thirty (30) days after any such order becomes dispositive of said appeal and confirming a plan of the Debtors becomes final and subject to no further appeal.

"Plan" shall mean this Plan of Reorganization.

1

## ARTICLE II
## DESCRIPTION OF PLAN

This is a Reorganizing Plan. The principal facet of this Plan of Reorganization is to recognize as secured debt, that portion of the current mortgages on each property to the extent of each property's current fair market value. As a result, that portion of the current mortgages that are not recognized as secured will be treated as under-secured creditors and shall be considered in their own class of claims, Class XV, and the dividend paid thereto to the resulting under-secured portion of the Class II to Class XI Unsecured Claim holders will be five (5%) percent paid via quarterly dividends commencing, paid pro-rata to each Unsecured Class member on the Effective Date, followed by nineteen quarterly cash payments thereafter over a five year period. Each remaining secured claimant's mortgage shall be restated to a 30 year mortgage bearing an interest rate of 5 percent, with payments commencing on the Effective Date of the Plan. Priority Creditors shall be paid the full amount of their claims, by 20 quarterly payments commencing on the Effective Date of the Plan. Class XIII Unsecured Creditors will be paid a dividend of twenty percent (20%) of their allowed unsecured Claims. Allowed General Unsecured Creditors will be will be offered a dividend of twenty (20%) percent via a ten percent payment paid on each allowed claim on the Effective Date and payment of 2.5% of each allowed claim on each of the four anniversary dates thereafter. The Plan will be funded by the rental revenue and wages of the Debtors

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

All claims, as defined under §101(4) of the Code and all interests in equity securities as defined in §101(15) of the Code, of whatever nature, whether scheduled or not scheduled, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, shall be bound by the provisions of this plan and are hereby classified as follows:

1. Class I consists of Allowed Administrative Claims which are estimated to be

2

approximately $27,500.00 as of the date of this Disclosure Statement. The Plan contemplates paying the following items in full on the Plan Confirmation Date:

Timothy M. Mauser, Esq.; Court approved bankruptcy counsel; $27,500.00

The foregoing estimated payments to be made to Court approved professionals are subject to the approval of the Bankruptcy Court prior to payment. The amount shown as payable to the Debtors' counsel does not reflect the $7,500.00 retainer (net of the filing fee) previously paid to Debtors' counsel. The Office of the U.S. Trustee's administration fees are also to be paid in full on the Effective Date, as are any other allowed administrative claims.

2. Class II through Class XI consist of the claims of the Debtors' current mortgage holders; whose secured claims are subject to modification pursuant to 11 U.S.C. §506(b) and 11 U.S.C. §1129(b)(2)(A)(i). As of this date, the Debtors have identified potentially allowed secured claims totaling $1,145,000.00 and resulting unsecured claims resulting from the reduction of such secured claims of the Debtor totaling $ 1,231,105.74. The Allowed Secured Claims of Classes II to XI Claims will retain the liens securing such claims to the extent of the allowed amount of such claim, and will receive deferred cash payments equal to at least the allowed amount of such claims with interest. The resulting unsecured claims forming the so called "cram down" will be offered a total dividend under the Plan of Reorganization of five percent (5%) of allowed unsecured claims. Payments to unsecured creditors will be made by making an initial cash disbursement on the Effective Date, and quarterly cash payments thereafter for five years, to each of Class II to XI which are determined to have under secured claims. Classes II to XI are impaired.

3. Class XII consists of the Allowed Priority Claims of the City of Boston for real estate taxes and water and sewer charges incurred pre-petition. Allowed Class XII Claims will be paid 100% of their allowed claims. Payments to Class XII priority creditors will be made by making an initial cash disbursement on the Effective Date, and quarterly cash payments thereafter for five years, all payable pro-rata. Class XII is impaired.

4. Class XIII consists of Allowed General Unsecured Creditors of the Debtors. Allowed General Unsecured Creditors will be will be offered a total dividend under the Plan of Reorganization of Class XIII consists of Allowed General Unsecured Creditors of the Debtors. Allowed General Unsecured Creditors will be will be offered a dividend of twenty (20%) percent via a ten percent payment paid on each allowed claim on the Effective Date and payment of 2.5% of each allowed claim on each of the four anniversary dates thereafter. Class XIII unsecured claims are estimated to be $ 65,144.27.  Class XIII is impaired.

5. Class XIV equity holders, the Debtors, will retain their equity interest in their property but will receive no distributions. This Class is unimpaired.  Steadman Blake and Tryphina Blake will manage and maintain their properties and will to the extent necessary contribute so much of their income as is necessary to maintain the Plan.

6. Class XV consists of those Class II through Class XI mortgage holders whose lien is under-secured. The Debtors have calculated that the total amount of under-secured claims total $ 1,231,105.74. Each under-secured claim holder will be offered a choice between receiving a five percent (5%) dividend to be paid in twenty (20) quarterly payments commencing on the Effective Date and having the under-secured portion of their lien terminated or retaining their under-secured lien and forgoing the offered dividend.

Class XV members who wish to retain their under-secured lien must elect pursuant to 11 U.S.C. 1111(b)(2) to opt out of the offered Class XV dividend. Those class members who wish to elect not to receive the offered dividend and retain their lien on the under-secured portion of their claim must file the enclosed 11 U.S.C. §1111(b) Election Form pursuant with this Bankruptcy Court's Order (see Exhibit 9).

Class XV members who elect §1111(b)(2) treatment will not receive any payment on the under-secured portion of their mortgages, until such time as the Debtors sell or refinance the collateral.

# ARTICLE IV
## ADMINISTRATIVE EXPENSES UNDER §507(a)(1)

Allowed Administrative Claims (designated as Class I Claims) shall be paid in full, on the latter of the Plan Confirmation Date or the date they are allowed by an Order of the Bankruptcy Court. The payments contemplated by the Plan shall constitute full satisfaction of allowed Administrative Claims. Administrative Claims include any post-petition, unpaid bills or charges incurred in the ordinary course of business and the fees and expenses allowed to professionals employed upon Court authority to render services to the Debtor during the course of the Chapter 11 Case.

The sole professional engaged during the pendency of this bankruptcy case to date is Timothy M. Mauser, Esq. and Mauser & Mauser, bankruptcy counsel for the Debtors. Charles Matrakis may be engaged as a licensed appraiser to testify as to valuation if necessary. Any Professional fees incurred by the Debtors subsequent to the filing of the Debtors' Chapter 11 petition are administrative claims payable by the Debtors pursuant to their Plan of Reorganization.

The Debtors have, in the ordinary course of their business, not incurred trade debt as of the date of the Disclosure Statement beyond their normal operating requirements. Any trade debt of the Debtors is for normal purchases and technician service and is paid in accordance with normal terms. All such debt will be current at the time of Plan confirmation. As the Debtors make full payment of all debt of this type within thirty days of incurrence, no special provision is made for the payment of this debt in the Debtors' Plan of Reorganization.

The Debtors expect to be current with respect to all debt to taxing authorities such as employment taxes which could be considered an administrative claim. As the Debtors contemplate full payment of all debt of this type within thirty days of its incurrence, no special provision is made for the payment of this debt in the Debtors' Plan of Reorganization.

In order to be compensated, all professionals related to this case must apply to the Bankruptcy Court for compensation and will be paid the amount which the Bankruptcy Court allows. This Disclosure Statement was prepared and submitted at a point anticipated to be approximately thirty days prior to the date proposed for Confirmation and more work by the Debtors' bankruptcy counsel may be rendered to the Debtors. Nonetheless, Debtors' counsel

does not expect total professional fees and costs to exceed $27,500.00.

Normally, fees for professional persons awarded under §330 of the Code, which constitute administrative expenses entitled to priority, would be paid in full after Plan confirmation, unless other arrangements are made between the claimant and the Debtors.

The Debtors estimate that the Bankruptcy Court may allow total compensation for bankruptcy counsel and accounting services of $27,500.00 for fees and expenses for services in this Chapter 11 case, which would normally be paid in full upon confirmation of this case. Debtors' Counsel's total fees and expenses are estimated to be approximately $27,500.00 of which $8,539.00 has been received as a retainer.

## ARTICLE V
## SECURED CLAIMS- CLASSES II THROUGH XI

Class II through Class XI consist of the claims of the Debtors' current mortgage holders; whose secured claims are subject to modification pursuant to 11 U.S.C. §506(b) and 11 U.S.C. §1129(b)(2)(A)(i). As of this date, the Debtors have identified potentially allowed secured claims totaling $1,145,000.00 and unsecured claims resulting from the reduction of such secured claims totaling $ 1,231,105.74. The Allowed Secured Claims of Classes II to XI will retain the liens securing such claims to the extent of the allowed amount of such claim, and will receive deferred cash payments equal to at least the allowed amount of such claims plus interest. The resulting under secured claims forming Class XV will be offered a total dividend under the Plan of Reorganization of five percent (5%) of allowed unsecured claims. Payments to under secured creditors will be made by making an initial cash disbursement on the Effective Date, and quarterly cash payments thereafter for five years, to each of Class II to XI which are determined to have under secured claims. See Class XV treatment. Classes II to XI are impaired. The specific treatment of Classes II through XI are as follows:

**1. Class II,** the secured claim of Washington Mutual Bank, holder of the First Mortgage on 121 Woodrow Avenue, Dorchester, Ma. will be reduced in value from approximately $355,051.00 to the property's fair market value of $250,000.00. The restated Class II Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class II

6

Mortgage will be paid in full via equal monthly payments over a 30 year term, at a fixed interest rate of five. The under secured portion of the Class II mortgage will be treated as unsecured debt and the Class II unsecured claim of $ 105,051.00 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

**2. Class III,** the secured claim of GMAC, holder of the Second Mortgage on 121 Woodrow Avenue, Dorchester, Ma. will be reduced in value from approximately $64,532.00 to zero, as the entire amount of the Class III mortgage is under secured. The Class III Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under secured portion of the Class III claim will be treated as a Class XV unsecured debt and will receive a five (5%) percent dividend over the life of the Plan. This Class is impaired.

**3. Class IV**, the secured claim of Ocwen Bank holder of the First Mortgage on 11 Claybourne Street, Dorchester, Ma. will be reduced in value from approximately $447,828.00 to the property's fair market value of $ 250,000.00. The restated Class IV Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class IV Mortgage will be paid in full via equal monthly payments over a 30 year term, at a fixed interest rate of five percent. The under secured portion of the Class IV mortgage will be treated as a Class XV unsecured debt and the unsecured claim of $ 197,828.00 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

**4. Class V,** the secured claim of Home Eq. Financing, holder of the Second Mortgage on 11 Claybourne Street, Dorchester, Ma. will be reduced in value from approximately $24,135.81 to zero, as the entire amount of the Class V mortgage claim is under secured. The Class V Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under secured portion of the Class V claim will be treated as a Class XV unsecured debt and the unsecured claim of $24,135.81 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

7

**5. Class VI**, the secured claim of First Franklin Bank, holder of the First Mortgage on 7 Sayward Street, Dorchester, Ma. will be reduced in value from approximately $332,880.00 to the property's fair market value of $ 200,000.00. The restated Class VI Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class VI Mortgage will be paid in full via equal monthly payments over a 30 year term, at a fixed interest rate of five percent. The under secured portion of the Class II mortgage will be treated as a Class XV unsecured debt and the unsecured claim of $ 132,800.00 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

**6. Class VII**, the secured claim of Franklin Bank, holder of the Second Mortgage on 7 Sayward Street, Dorchester, Ma. will be reduced in value from approximately $82,749.00 to zero, as the entire amount of the Class VII mortgage claim is under secured. The Class VII Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under secured portion of the Class VII claim will be treated as a Class XV unsecured debt and the unsecured claim of $82,749.00 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

**7. Class VIII**, the secured claim of Saxon Mortgage Company, holder of the First Mortgage on 10-12 Joseph Street, Dorchester, Ma. will be reduced in value from approximately $424,309.05 to the property's fair market value of $ 250,000.00. The restated Class VIII Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class VIII Mortgage will be paid in full via equal monthly payments over a 30 year term, at a fixed interest rate of five percent. The under secured portion of the Class VIII mortgage will be treated as a Class XV unsecured debt and the unsecured claim of $ 174,309.05 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

**8. Class IX**, the secured claim of Franklin Bank, holder of the Second Mortgage on 10-12 Joseph Street, Dorchester, Ma. will be reduced in value from approximately $109,836.19 to zero, as the entire amount of the Class IX mortgage claim is under secured. The Class IX Mortgage will be eliminated pursuant to the provision of the Chapter 11 Plan. The under secured portion

8

of the Class IX claim will be treated as a Class XV unsecured debt and the unsecured claim of $109,836.19 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

9. **Class X**, the secured claim of ASC, holder of the First Mortgage on 9 Claybourne Street, Dorchester, Ma. will be reduced in value from approximately $457,199.19 to the property's fair market value of $195,000.00. The restated Class X Mortgage will retain its first mortgage position to the extent of the property's value. The restated Class X Mortgage will be paid in full via equal monthly payments over a 30 year term, at a fixed interest rate of five percent. The under secured portion of the Class X mortgage will be treated as a Class XV unsecured debt and the unsecured claim of $262,000.00 will receive a five percent (5%) dividend over the life of the Plan. This Class is impaired.

10. **Class XI**, the secured claim of EMC, holder of the Second Mortgage on 9 Claybourne Street, Dorchester, MA will be reduced in value from approximately $87,665.50 to $0.00, as the Class XI mortgage claim is under-secured. The Class XI Mortgage will be eliminated pursuant to the Chapter 11 Plan. The under-secured portion of the Class XI claim will be treated as Class XV unsecured debt and the Class XI unsecured claim of $87,665.50 will receive a five (5) percent dividend over the life of the Plan. This Class is impaired.

## ARTICLE VI
### PRIORITY CLAIMS- CLASS XII

Class XII consists of the Allowed Priority Claims of the City of Boston for real estate taxes and water incurred pre-petition. Allowed Class XII Claims will be paid 100% of their allowed claims. Payments to Class XII priority creditors will be made by making an initial cash disbursement on the Effective Date, and nineteen quarterly cash payments thereafter, all payable pro-rata. Class XII is impaired. Class XII Priority Claims are estimated to be $30,785.00.

## ARTICLE VII
## GENERAL UNSECURED CLAIMS- CLASS XIII

Class XIII consists of the claims of general unsecured creditors and trade creditors of the Debtors. As of this date, the Debtors have identified potentially allowed unsecured claims totaling $65,144.27. Allowed General Unsecured Creditors will be will be offered a dividend of twenty (20%) percent via a ten percent payment paid on each allowed claim on the Effective Date and payment of 2.5% of each allowed claim on each of the four anniversary dates thereafter. Class XIII is impaired.

## ARTICLE VIII
## EQUITY HOLDERS- CLASS XIV

Class XIV consists of the Debtors as equity holders of the Estate's assets. Both Steadman Blake and Tryphena Blake will retain their ownership interest in the Estate's assets but will receive no Plan distribution. This Class is not impaired.

## ARTICLE IX
## UNDER-SECURED CLAIMS- CLASS XV

Class XV consists of those Class II through Class XI mortgage holders whose lien is under-secured. The Debtors have calculated that the total amount of under-secured claims total $657,105.74. Each under-secured claim holder will be offered a choice between receiving a five percent (5%) dividend to be paid in twenty (20) quarterly payments commencing on the Effective Date and having the under-secured portion of their lien terminated or retaining their under-secured lien and forgoing the offered dividend.

Class XV members who wish to retain their under-secured lien must elect pursuant to 11 U.S.C. 1111(b)(2) to opt out of the offered Class XV dividend. Those class members who wish to elect not to receive the offered dividend and retain their lien on the under-secured portion of their claim must file the enclosed 11 U.S.C. §1111(b) Election Form pursuant with this Bankruptcy Court's Order (see Exhibit 9).

10

Class XV members who elect §1111(b)(2) treatment will not receive any payment on the under-secured portion of their mortgages, until such time as the Debtors sell or refinance the collateral.

## ARTICLE X
## PROVISIONS CONCERNING RESTATED MORTGAGES

This Plan of Reorganization recognizes as secured debt, that portion of the current mortgages on each property to the extent of each property's current fair market value. That portion of the current mortgages that are, as a result, not recognized as secured will be treated as unsecured debt and be paid a dividend as unsecured creditors over the life of the Plan. Each remaining secured claimant's mortgage shall be restated to a 30 year mortgage bearing a fixed interest rate of five percent, with payments commencing on the Effective Date of the Plan. All other terms of the existing mortgages will remain the same unless specifically altered by this Plan. The Allowed Secured Claims of Classes II to XI Claims will retain the liens securing such claims to the extent of the allowed amount of such claim, and will receive deferred cash payments equal to at least the allowed amount of such claims. Class II to Class XI Claim Holders, whose mortgages have been affected by the Plan, shall amend such mortgages that remain pursuant to the terms contained in this Chapter 11 Plan of Reorganization within 30 days of Plan Confirmation. Class II to Class XI Claim Holders, whose mortgages have been deemed totally under secured shall file mortgage releases within 30 days of Plan Confirmation.

## ARTICLE XI
## PROVISIONS CONCERNING THE PLAN EXECUTION

The Debtors will serve as distribution agent of all payments to be made. The distributions for Class I will be made on the Plan Confirmation Date. The distributions for allowed Class II to Class XI Claims will commence (30) days from the Confirmation Date of this Plan of Reorganization, the Effective Date, for both the secured and unsecured portion of such claims.

11

The Plan is premised upon the Debtors' belief that the unsecured creditors will receive a greater percentage of their claims under the Plan than they would upon a forced liquidation of the business under Chapter 7 of the Bankruptcy Code. See Exhibit 2, Liquidation Analysis.

The Plan provides that the Class XIV Claim Holders, Steadman and Tryphena Blake, shall retain their equity interest in the Chapter 11 Bankruptcy Estate's property.

This is a boot strap plan and is predicated upon the Debtors ability to maintain the rental income stream of their rental properties, and thereby making the proposed Plan payments to both secured, priority and unsecured claim holders. It is anticipated that where necessary the Debtors' will contribute their personal employment income to meet Plan payments as proposed herein; however any such contributions by the Debtors will be considered further contributions to capital and not extensions of credit.

On Confirmation, all property of the estate shall be retained by the Debtors. Any other interests in the Debtor's property, if any, shall be retained by the holders thereof, free and clear of any claims, liens and encumbrances.

## ARTICLE XII
## RETENTION OF JURISDICTION

Following the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Case for the following limited purposes:

1. To take any action to resolve any disputes arising out of or relating to any Claim; to determine other issues presented by or arising under the plan, and to take any action to resolve any disputes of creditors with respect to their Claims;

2. To construe and to take any action to enforce the Plan, issue such orders as may be necessary for the implementation, execution and consummation of the Plan, and determine all other matters which may be pending on the Confirmation Date;

3. To determine any and all applications pending on the Confirmation Date or thereafter for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting there from;

4. To determine all applications, adversary proceedings, contested matters and other litigated matters pending on the Effective Date;

5. To determine such other matters and for such other purposes as may be provided in the Confirmation Order; and

6. To modify the Plan but only in accordance with the Plan or to remedy any apparent non-material defect or omission in the Plan, or to reconcile any non-material inconsistency in the Plan so as to carry out its intent and purposes.

The Effective Date shall be thirty (30) days after confirmation, or at the conclusion of all appeals from an order confirming this Plan.

## ARTICLE XIII
## PROVISION FOR DISPUTED CLAIMS

The Debtors may object to the allowance of any Claim within 30 days of the Confirmation Date, by filing an objection with the Bankruptcy Court and serving a copy thereof on the holder of the Claim, in which event the Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by allowance of the Claim in whole or in part, the Debtors will make any payments in respect of such Allowed Claim in accordance with and limited by the Plan.

## ARTICLE XIV
## ADMINISTRATIVE EXPENSES AND OTHER POST PETITION CLAIMS

All unsecured obligations incurred by the Debtors in the ordinary course of business in the Chapter 11 Case, other than to vendors who have offered credit terms post-petition in the ordinary course, shall be paid in full at the time of Confirmation.

The Debtors will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6). After confirmation, the Debtors will serve the United States Trustee with a monthly financial report for each month or portion thereof the case remains open. The monthly financial report shall include the following:

1. A statement of all disbursements made during the course of the month, whether or not pursuant to the Plan;

2. A summary, by class, of amounts distributed or property transferred to each recipient

13

under the plan and an explanation of the failure to make any distributions or transfers of property under the Plan;

3. Debtors' projections as to its continuing ability to comply with the terms of the Plan;

4. A description of any other factors which may materially affect the Debtors' ability to consummate the Plan; and

5. Estimated date when an application for final decree will be filed with the Court or in the case of the final monthly report, the date the decree was filed.

Respectfully submitted,
Steadman L. Blake and
Tryphena F. Blake
by their attorney,

Timothy M. Mauser, Esq. BBO #542050
Mauser & Mauser
98 North Washington Street
Boston, MA 02214
Tel: (617) 951-2300
Fax: (617) 951-2323

Dated: March 16, 2009

DWBLIBDB\219466.1  9998/43