UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re

Steadman L. Blake and
Tryphena F. Blake

                    Debtors

Case No. 07-12445-FJB
Chapter 11

**BRIEF OF SECURED CREDITOR  RELATIVE TO
VALUATION OF PROPERTY IN A PLAN OF REORGANIZATION
AND DATE TO SET INTEREST RATE**

BACKGROUND INFORMATION

JPMorgan Chase Bank, National Association, as purchaser of the loans and
other assets of Washington Mutual Bank, as successor-in-interest to Long Beach
Mortgage Company by operation of law  ("JPMorgan")  It is the holder of the first
mortgage on the debtors' residence  located  at 121 Woodrow Avenue,
Dorchester, MA.   ("The Property")  The proof of claim dated April 27, 2007 listed
a total debt of $355,051.15.

Tryphena F. Blake and Steadman L. Blake ("Debtors") filed a Chapter 11
bankruptcy petition on April 20, 2007.  The Debtors' schedules filed at the
commencement of this case listed the value of the Property at $485,000.00.  At
such value, JPMorgan's claim was unimpaired.

The debtors did not file their first Disclosure Statement or Chapter 11 Plan
until February 25, 2008. The Debtors' first Chapter 11 Plan  listed the fair market
value of this Property at $310,000.00 by the sales comparison approach and

$364,000.00 by the income approach.  This Property is a two-family property which  provides rental income to the debtors.  The debtors chose to treat this claim as secured to the extent of $310,000.00 even though by the income approach, this claim was still unimpaired.    The secured claimant was offered an interest rate of 6.5%.    JP Morgan's predecessor WAMU filed an objection to this Plan on March 6, 2008  (docket entry #138).

The debtors voluntarily withdrew their Disclosure Statement on April 15, 2008 and made no other efforts towards their reorganization until the Court scheduled a status conference on the case for July 8, 2008.   On July 3, 2008, WAMU filed its motion for relief from stay, (docket entry #177).   The debtors' response stated that they would be shortly filing an Amended Disclosure Statement which would provide that WAMU *"shall be paid $485,000.00 with interest, as is the fair market value of the property, pursuant to the Debtors' Chapter 11 Plan"*.  (docket entry #181)

The debtors filed an Amended Disclosure Statement and Amended Chapter 11 Plan on July 23, 2008.  Contrary to the response to the motion for relief from stay,  the Amended Plan did not change the treatment of  JPMorgan's claim from what was offered in the earlier Disclosure Statement and Plan.

The hearing on the motion for relief from stay was continued on July 24, 2008 to August 28, 2008 and at that hearing, continued again to October 7, 2008 and then to October 22, 2008, which was rescheduled to October 21, 2008 by the Court.

The Court also set the Confirmation Hearing for October 21, 2008.  At that hearing in which the Court took up all pending matters, the debtors failed to obtain the necessary votes to confirm the Amended Plan.  The Court ordered the debtors to file an amended plan and disclosure statement within seven days. The hearing on the motion for relief from stay was continued by the court to November 18, 2008.

The debtors filed their Second Amended Disclosure Statement and Plan on October 30, 2008.

On November 18, 2008 the motion for relief from stay was continued to December 16, 2008 at which time the parties reported that they had entered into a stipulation on adequate protection payments which terminated the motion for relief.

The United States Trustee filed an objection to the debtors' Second Amended plan stating that the plan was not feasible per 11 U.S.C §1129(a)(11). A hearing on the objection was held on February 10, 2009.  At the hearing, the Court ordered the debtors to file a third amended Chapter 11 plan and disclosure statement by March 3, 2009. The debtors filed a motion to extend the deadline, which was granted.  The debtors did not file their amended plan and amended disclosure statement until March 25, 2009.

The Third Amended Plan proposed even newer, lower valuations for all of the  properties and lower interest rates.    According to this plan, the debtors now sought to further reduce the secured claim of JPMorgan to $250,000.00 and offered the secured claimant an interest rate of 5%.    JP Morgan objected to

the debtors' use of reduced values at each juncture of this case and the debtors'
proposal of lower interest rates resulting from  the declining economic conditions
over the course of the two years they were unable to confirm a plan of
reorganization.

### WHEN IS THE APPROPRIATE TIME TO VALUE COLLATERAL AND SET INTEREST RATE TO ESTABLISH THE EXTENT OF THE SECURED CLAIM?

§ 506 "Determination of secured status" is silent as to when the value of the
property securing the lien is to be determined along with the accompanying
interest rate but such a determination of both value and interest rate is vital to
establishing the rights of creditors to adequate protection and ultimately to their
rights under any proposed Chapter 11 Plan.   Three principal theories used to
determine value are the "single valuation" method, the" dual valuation" method
and the "continuous valuation" method.  There is no consensus about which
method is to be used.  Some jurisdictions have adopted  the "dual valuation"
approach which establishes an early valuation for adequate protection purposes
and a later valuation for confirmation purposes.  Other jurisdictions have adopted
the "continuous valuation" approach.

The most equitable method of determining valuation is the "single valuation"
method which fixes valuation early into the case   It is the most equitable to both
debtor and creditor with neither party being able to take advantage of a declining
or increasing real estate market during the course of the Chapter 11 case.   The
single valuation method also provides early stabilization of claims and  continuity
of case management:

> "The single valuation method not only establishes the value of the
> property, it also fixes the allowed secured, and the allowed
> unsecured claim for all purposes.  The collateral is valued, typically
> as of the petition date, and at confirmation the adequate protection
> payments are subtracted from that value to establish the amount of
> the allowed secured claim which must be paid under the confirmed
> plan."
> "*Adequate Protection, The Undersecured Creditor and the
> Depreciating Property".*  Sid Diamond, Esq. Norton Bankruptcy Law
> Adviser, April, 2002.

Attorney Diamond goes on to explain that in the real world, most often there is

not the need for a second hearing on valuation at confirmation unless the creditor

demands it:

> "Some opinions discuss a second valuation at confirmation as if
> different results are going to be obtained because one hearing
> was conducted for  the purpose of  adequate protection and the
> other at confirmation-as if there was no linkage between the two
> valuations.  This makes little sense.   The only justification for any
> separate valuation methodology or difference in outcome would be
> if the intended use or disposition of the property changed and the
> change would require a different result."…

It is vital to the administration of the case to make an early determination of

value and interest rate, whether by consent (implied or actual) or by evidentiary

hearing if an objection to valuation and/or interest rate is filed because of the

very nature of the collateral securing the claim.


Does  § 1129(a)(7)(A)(ii) compel a new valuation at confirmation, a valuation

which in actuality is rarely done?  Can this section live harmoniously with  a

"single valuation" theory to establish the value of a secured claim at the date of

filing the Chapter 11 petition absent an objection to value by the creditor?  There

appears to be no decisions in this jurisdiction on point but other jurisdictions have

discussed this issue and ruled for the single valuation method or the dual

valuation method or the continuous valuation method using various theories to
harmonize various sections of the Code.

The Court in *In re Cason*, 190 B.R 917, 924 (N.D.Ala 1995) discussed the
three ways in which a valuation issue can be addressed for confirmation.  "The
first approach is single valuation or date of petition value."  *Id*.  The Court
explained that "under this approach, the value of the collateral is established as
of the date of the petition.  It is the value that is used whenever a valuation is
called for throughout the entire bankruptcy case."  .  The Court opined that the
amount to which a creditor is secured is determined at the filing of the petition.
*Id.* at 925.  Another Court,  in *In re Embassy Properties North,* 196 B.R. 172
(Kansas 1996) addressed the question of when the collateral should be valued.
That Court believed that the date to value a creditors' collateral for secured claim
purposes was at the date of the debtor's Chapter 11 filing.  The Court ruled an
allowed claim should be determined early in the case.  (*Id.* at 177) stating:

> "Only classes of "allowed claims" can vote on the reorganization
> plan.  Voting on a plan must occur before confirmation.  Accordingly,
> if allowance and valuation must occur before a vote, delaying valuation
> until confirmation is unworkable."  *Id.*

*In re Embassy* addressed Section 1129(a)(7) and its effect on valuation.
It stated that the language "effective date of the plan" of §1129(a)(7) is referring
to the amount that a plan must distribute to claim holders and "not the value of
the collateral that measures a secured claim."  *Id*.  The Court stated that this
language implies that the allowed secured claim should be determined before
confirmation,  then at confirmation the Court can verify that the present value of
plan distributions are equal to or exceed the amount of the previously determined

secured claim. " *Id*. This case explains that the language of 1129(a)(7) is addressing the amount to be distributed pursuant to the earlier value, and not a new opportunity to value the property.

It follows that if valuation is to be determined as of the date the petition was filed, so too should the applicable interest rate be established by using the "formula" method discussed by the Supreme Court in *Till v. SCS Credit Corp., 541U.S. 465 (2004)* which sets a base rate (often prime rate as of the date of the petition) and adding a premium based upon the risks associated with the particular case, on a case by case method. Such risks involve the volatility of the market, the risk in providing credit to a debtor and examining the pre-petition arrearage. See also In re St.Cloud, 209 B.R. 801 (Bankr.D.Mass.1997)

CONCLUSION

There are no provisions in the Code requiring the debtors to present a confirmable plan of reorganization within a set time but the Code does require that a plan be proposed in good faith. The Bankruptcy Court is, above all, a court of equity always aiming to provide for relief for the debtor but protecting the creditors in equal fashion. Allowing the debtors to enjoy a windfall at the expense of their creditors creates a disproportionate balance of debtor and creditor. Using valuations that are determined as closely to the filing date as possible provides the most equitable "playing field" for both the debtor and the creditor. Otherwise there is no incentive to debtors to propose a feasible plan within a reasonable period of time. Applying the above case law to the current

bankruptcy, the debtors' plan should treat JPMorgan's claim in full  as indicated

by the value the debtors placed on the Property at the filing of this case (unless

disputed by the creditor) and should therefore treat all other secured claimantsin

accordance with the values placed on the related properties at that time.  The

language of §1129(a)(7) addresses when the amount should be distributed to the

creditors, and is not meant to provide another proverbial "bite at the apple" of

valuation.


July 7, 2009                              Respectfully submitted
                                          JP Morgan Chase Bank
                                          By its attorneys,

                                          /s/ Deirdre M. Keady, Esq.
                                          /s/ Rian K. Vernon, Esq.
                                          BBO 359020
                                          Harmon Law Offices PC
                                          P.O. Box 610345
                                          Newton Highlands, MA 02461-0345
                                          781-292-3900
                                          617-243-4049 (fax)
                                          dkeady@harmonlaw.com
                                          rvernon@harmonlaw.com

CERTIFICATE OF SERVICE

I Deirdre M. Keady, Esq. state that on July 7, 2009 I electronically filed the foregoing Brief  with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF system.  I served the foregoing document on the following participants by said electronic mail system:

Office of the US Trustee
Erick K. Bradford, Esq. for the Office of the U.S.Trustee
Timothy M.Mauser, Esq. for the debtors
Joseph G. LaRusso, Esq. for the City of Boston, Treasury Dept.
Victor Manougian for Deutsche Bank

/s/ Deirdre M. Keady