# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| |
|---|
| In re<br><br>**STEADMAN L. BLAKE and**<br>**TRYPHENA F. BLAKE,**<br><br>                    **Debtors** |

**Chapter 11**
**Case No. 07-12445-FJB**

## MEMORANDUM OF DECISION ON
## SECURED CREDITORS' OBJECTIONS TO CONFIRMATION OF CHAPTER 11 PLAN

The principal issue presented by the present objections to confirmation is whether, in quantifying the value of property securing a claim for purposes of "cram down" under 11 U.S.C. § 1129(b)(2)(A)(i), the date of valuation is the date on which the bankruptcy case was commenced, as the secured creditors now argue, or the date of confirmation, as the debtors propose in their plan. The values in question have dropped dramatically in the two years between commencement of this case and the debtors' presentation of their plan for confirmation. For the reasons set forth below, the court holds that § 1129(b)(2)(A)(i) requires valuation as of the date of confirmation and accordingly will overrule the objections and confirm the plan.


**FACTS AND PROCEDURAL HISTORY**

Steadman and Tryphena Blake filed a joint petition for relief under Chapter 11 of the Bankruptcy Code on April 20, 2007. They were then, and remain today, the owners of the four rental properties presently at issue, each encumbered by two mortgages. Now, in their third amended plan of reorganization ("the Plan"), which they filed on March 16, 2009, the debtors propose the same treatment for each of the four first-position mortgage claims:[1] each

---

[1] The present controversy concerns only the senior mortgage on each property. The debtors propose to treat each junior mortgage as wholly unsecured, and no junior mortgagee has objected to this treatment.

mortgagee will retain the mortgage securing its claim; and on account of its secured claim, each

mortgagee will receive a thirty-year stream of equal monthly payments having a present value

as of the date of confirmation of an amount that the debtors contend is the fair market value of

the property on the date of confirmation.  Accordingly, in Article V of the Plan, the Debtors

specify as follows:

1. the Class II secured creditor, JPMorgan Chase Bank, N.A., as purchaser of the
loans and other assets of Washington Mutual Bank[2] (J.P. Morgan Chase"), as
holder of the first mortgage on the property at 121 Woodrow Avenue, Dorchester,
Massachusetts, will have a secured claim in the amount of only $250,000, to be
paid in full through equal monthly payments over a thirty-year term at a fixed
interest rate of five percent, notwithstanding that the claim in question is in the
amount of $355,051.15 and that the debtors themselves valued the property in
their schedules at $485,000 as of the date of their bankruptcy filing;

2. the Class IV secured creditor, HSBC Bank USA, NA, as Trustee[3] ("HSBC"), as
holder of the first mortgage on the property at 11 Claybourne Street, Dorchester,
Massachusetts, will have a secured claim in the amount of only $250,000, to be
paid in full through equal monthly payments over a thirty-year term at a fixed

---

[2]  The plan identifies Washington Mutual Bank as the holder of the Class II mortgage. However, the objection to the treatment of this claim was filed by JPMorgan Chase Bank, as purchaser of the loans and other assets of Washington Mutual Bank.  The debtors did not question the standing of JPMorgan Chase to object to this claim or dispute that it is now the holder of the mortgage in question.  The court is satisfied that JPMorgan Chase is the true holder of the Class II mortgage and claim.

[3] The plan identifies "Ocwen Bank" as the Class IV secured creditor, but this appears to be a misnomer, as the relevant proof of claim identifies the creditor as HSBC Bank USA, NA, as Trustee on Behalf of ACE Securities Corp. Home Equity Loan Trust and for the Registered Holders of ACE Securities Corp. Home Equity Loan Trust, Series 2005-HE6, Asset Backed Pass-Through Certificates.  The same proof of claim indicates that "Ocwen" is the name of the party to whom notices should be sent concerning the proof of claim.  The objection to the treatment of this claim was filed by HSBC; and in its objection, HSBC identifies Ocwen Loan Servicing LLC as the servicer of the mortgage.  The court is satisfied that HSBC is the holder of the Class IV mortgage and claim.

interest rate of five percent, notwithstanding that the claim in question is in the

amount of $447,828.10 and that the debtors themselves valued the property in

their schedules at $452,000 as of the date of their bankruptcy filing;[4]

3.    the Class VI secured creditor, U.S. Bank National Association, as Trustee for

First Franklin Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series

2005-FF10 ("U.S. Bank"),[5] as holder of the first mortgage on the property at 7

Sayward Street, Dorchester, Massachusetts, will have a secured claim in the

amount of only $200,000, to be paid in full through equal monthly payments over

a thirty-year term at a fixed interest rate of five percent, notwithstanding that the

claim in question is in the amount of $350,772.98 and that the debtors

themselves valued the property in their schedules at $332,800 as of the date of

their bankruptcy filing; and

4.    the Class X secured creditor, JPMorgan Chase Bank, NA, as Trustee[6] ("JP

Morgan Chase"), as holder of the first mortgage on the property at 9 Claybourne

Street, Dorchester, Massachusetts, will have a secured claim in the amount of

---

[4]  In its proof of claim, filed April 27, 2007, HSBC valued the collateral at $415,000.

[5]  The plan identifies the Class VI secured creditor as First Franklin Bank, but this appears to be a mistake. The objection to the treatment of this claim was filed by U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2005-FF10 ("U.S. Bank"), and the underlying proof of claim was filed by Home Loan Services, Inc., whom U.S. Bank identifies as the servicer of its mortgage. The debtors did not question the standing of U.S. Bank to object to this claim or dispute that it is the holder of the mortgage in question. The court is satisfied that U.S. Bank is the true holder of the Class VI mortgage and claim.

[6]  The plan identifies the Class X secured creditor only as "ACE," but this appears to be a mistake, as the relevant proof of claim identifies the creditor as "America's Servicing Company as servicer for JPMorgan Chase Bank, NA as Trustee for Nomura Asset Acceptance Corporation Mortgage Pass Through Certificates Series 2004-AR3 its successors and assigns." The objection to the treatment of this claim was filed by JP Morgan Chase. The debtors did not question the standing of JPMorgan Chase to object to this claim or dispute that it is the holder of the mortgage in question. The court is satisfied that JP Morgan Chase is the true holder of the Class X mortgage and claim.

only $195,000, to be paid in full through equal monthly payments over a thirty-

year term at a fixed interest rate of five percent, notwithstanding that the claim in

question is in the amount of $457,199.19 and that the debtors themselves valued

the property in their schedules at $511,496 as of the date of their bankruptcy

filing.

The Plan further provides, with respect to each mortgage claim, that the unsecured balance of

each mortgagee's claim will be treated as an "undersecured claim"—under Article IX of the plan,

these are promised a five percent dividend over five years—unless the mortgagee makes a

section 1111(b) election,[7] in which case the mortgagee would receive no dividend on account of

its unsecured claim but retain its mortgage on the unsecured portion of its allowed claim.

Section 1111(b) elections have been filed as to two of the mortgage claims at issue.  JP

Morgan Chase filed such an election as to its Class X secured claim.  And Home Loan Services,

Inc. filed a section 1111(b) election as to the Class VI secured claim.  Both elections were filed

in response to earlier plan iterations and before the debtors filed their present plan, but they

clearly apply to the present plan as well.

Four objections were filed to the Plan, all by secured creditors:  one by JPMorgan

Chase, objecting to the treatment of the Class II claim; one by HSBC, objecting to the treatment

of the Class IV claim; one by U.S. Bank, objecting to the treatment of the Class VI claim; and

another by JPMorgan Chase, objecting to the Class X claim.  The four objections are virtually

identical in that each challenges the plan in only two respects.  First, the secured creditors

contend that in quantifying the value of property securing a claim for purposes of "cram down"

under 11 U.S.C. § 1129(b)(2)(A)(i), the appropriate date of valuation is the date on which the

bankruptcy case was commenced, not (as the debtors have proposed) the date of confirmation.

They do not deny that the properties have depreciated during this case to the values that the

---

[7] 11 U.S.C. § 1111(b).

debtors now use as the basis for the treatment of their respective claims.  Their dispute is solely

one of law.  The debtors concede that if the appropriate date of valuation is the date of their

bankruptcy filing, then their proposed values are inappropriate and confirmation must be denied.

The secured creditors' second objection is closely related to their first.  They contend

that in quantifying the interest rate necessary to assure that the stream of deferred payments

promised by the plan will have the present value required by § 1129(b)(2)(A)(i), a debtor is

required to use the base rate that existed at the time of the bankruptcy filing, not (as the debtors

propose) the rate applicable at the time of confirmation.  Again, the secured creditors do not

deny that the debtors' proposed five-percent rate is an appropriate rate if the proper date is that

of confirmation.  They merely deny that the date of confirmation is the appropriate date.  The

secured creditors contend that the rate would be higher if it were determined as of the date of

the bankruptcy petition; as proof of this, they rely on the fact that, in the original plan that the

debtors filed in this case, on February 25, 2008, they proposed to use an interest rate of 6.5

percent.

The court held a hearing on confirmation and took the matter under advisement.  At the

hearing, the debtors satisfied the court as to all other requirements of confirmation, and no

objection was voiced by any party other than as set forth above.

## DISCUSSION

The Plan satisfies all requirements of 11 U.S.C. § 1129(a) but the one in paragraph (8).

Paragraph (8) requires, with respect to each class, either that the class have accepted the plan

or that the class be unimpaired by the plan.  11 U.S.C. § 1129(a)(8).  The classes of the four

secured claims now at issue—each being constituted by only the single secured claim in that

class—are impaired, and each has rejected the plan.  When a plan satisfies the applicable

requirements of § 1129(a) other than paragraph (8), "the court, on request of the proponent of

the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan

does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or

interest that is impaired under, and has not accepted, the plan."  11 U.S.C. § 1129(b)(1).

The objecting secured creditors contend, in effect, that the plan does not satisfy

§ 1129(b)(1)'s "fair and equitable" requirement as to their claims.  In subsection 1129(b)(2)(A),

the Bankruptcy Code specifies three requirements for "fair and equitable" treatment as to a

secured claim.  Only the first, subsection (b)(2)(A)(i), is directly implicated here.  It states:

> (b)(2)  For the purpose of this subsection [i.e., § 1129(b)], the condition
> that a plan be fair and equitable with respect to a class includes the
> following:
>
>> (A)  With respect to a class of secured claims, the plan provides—
>>
>>> (i)(I) that the holders of such claims retain the liens
>>> securing such claims, whether the property subject to such
>>> liens is retained by the debtor or transferred to another
>>> entity to the extent of the allowed amount of such claims;
>>> and
>>>
>>> (II) that each holder of a claim of such class receive on
>>> account of such claim deferred cash payments totaling at
>>> least the allowed amount of such claim, of a value, as of
>>> the effective date of the plan, of at least the value of such
>>> holder's interest in the estate's interest in such property.

11 U.S.C. § 1129(b)(2)(A)(i).  The secured creditors do not dispute that the Plan satisfies the

lien retention requirement in clause (I).  Rather, their dissatisfaction is limited to clause (II), with

which they say the plan fails to conform in two respects.

1. **Date of Valuation**

First, the objecting secured creditors say that because the Plan is based on current values and not on those that existed upon commencement of the case, the value promised by the plan in inadequate.  They argue that "the value of such holder's interest in the estate's interest in such property," as that phrase is used in clause (II) of § 1129(b)(2)(A)(i), is the value of the collateral as of the commencement of the bankruptcy case.  The debtors take the opposite position, arguing that the value of the secured claim should be determined as of the date of confirmation.  The issue appears to be one of first impression in this circuit.[8]

The court must first determine whether the Bankruptcy Code expressly specifies the date as of which the property securing a claim must be valued for purposes of § 1129(b)(2)(A).  In two places—sections 1129(b)(2)(A)(i)(II) and 502(b)—the Code appears at first glance to address the issue.  On closer inspection, however, neither provision can be construed as resolving the issue presented.

In § 1129(b)(2)(A)(i)(II) itself, the Code specifies that the payments given for an allowed secured claim must have a certain present value "as of the effective date of the plan."  In doing so, however, this subsection specifies only a date as of which to measure what must be given for a secured claim, not how to value or quantify the secured claim itself.  In other words, it states that the payments given in satisfaction of a secured claim must have a present value, as of the date of confirmation, of *x*, but it doesn't tell us what *x* is or the date of *its* valuation.  Therefore, the answer is not in § 1129(b)(2)(A)(i)(II).

---

[8]  In fact the court is aware of no case law at all on this particular question.  There exists a body of case law addressing the parallel issue in the chapter 13 context.  See, for example, *In re Kennedy*, 177 B.R. 967 (Bankr. S. D. Ala. 1995) and cases cited therein.  Other cases address the time-of-valuation issue for purposes of 11 U.S.C. § 506(a) and adequate protection in chapter 11 cases.  See, for example, *In re Addison Properties Ltd. Partnership*, 185 B.R. 766 (Bankr. N. D. Ill. 1995).  But none address the specific demands of section 1129(b)(2)(A)(i)(II).

Next is section 502(b), which seems to supply the answer.  It states that, when a claim is objected to, and subject to certain exceptions, the court "shall determine the amount of such claim . . . *as of the date of the filing of the petition*, and shall allow such claim in such amount[.]" 11 U.S.C. § 502(b) (emphasis added).  However, because the specific takes precedence over the general, the applicability of § 502(b)—and especially its enjoinder to determine the amount of a claim as of the date of the petition—to *secured* claims is at least limited, if not wholly supplanted, by § 506(a) and (b), which deal more specifically with the manner of determination of secured claims.  Section 506 states three things that give cause to question the applicability of § 502(b) to the quantification of the secured portion of a claim.  First, section 506(a) states that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim."  11 U.S.C. § 506(a)(1).  It follows that knowing the amount of an "allowed claim"—one allowed under § 502(b)—is necessary but not sufficient to determine whether and to what extent that claim is a secured claim; and the quantification of the secured portion of a claim is a distinct act from the quantification of the claim itself under section 502(b), one not governed by § 502(b) itself. Second, "[s]uch value," *i.e*, the value of the creditor's interest in the estate's interest in property securing a claim, "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."  11 U.S.C. § 506(a)(1).  The valuation is therefore context-specific, dependent on the purpose of the valuation and the proposed disposition of the property.  These variables cannot be known at the commencement of the case; they are functions of the history of the case; and some dispositions, such as sale or foreclosure, will necessarily generate valuations dependent on market conditions and other

8

circumstances existing at the time at which the sale or foreclosure will occur.  Third, section

506(b) states that where the value of property securing a claim exceeds the amount of a claim,

"there shall be allowed to the holder of such claim, interest on such claim, and any reasonable

fees, costs, or charges provided for under the agreement or State statute under which such

claim arose."  11 U.S.C. § 506(b). This allowance for postpetition interest and other charges on

oversecured claims is a departure from § 502(b), under which interest that is unmatured, and

other charges that have not accrued, as of the date of the bankruptcy filing must be denied.  11

U.S.C. § 506(b)(2).  This departure necessarily requires determination of the amount of the

secured claim as of a date *after* the filing of the bankruptcy petition, after postpetition interest

and other charges have accrued.  For all these reasons, it follows that section 502(b)'s

requirement to determine the amount of a claim *as of the date of the filing of the petition* does

not apply to the quantification of the secured portion of a secured claim.  For these reasons I

conclude the Bankruptcy Code nowhere expressly specifies the date as of which the property

securing a claim must be valued for purposes of § 1129(b)(2)(A).

   Notwithstanding the lack of express guidance, the court finds in § 1129(b)(2)(A) two

indicators of congressional intent on the issue, both favoring valuation as of the date of

confirmation.  The first is in § 1129(b)(2)(A)(ii), which permits a plan to satisfy the "fair and

equitable" requirement as to a secured claim by an alternate treatment: specifically, sale of the

encumbered property free and clear of liens, with the liens to attach to the proceeds of the sale,

and the treatment of such liens on proceeds under clause (i) or (iii) of § 1129(b)(2)(A).[9]  Under

---

[9]  Clause (ii), in context, states:

   (b)(2)  For the purpose of this subsection [i.e., § 1129(b)], the condition
   that a plan be fair and equitable with respect to a class includes the
   following:

      (A)  With respect to a class of secured claims, the plan provides—
      . . .

this clause, the plan may, through a sale of the collateral free and clear of liens upon or after

confirmation of the plan, with the liens to attach to the proceeds in lieu of the collateral, provide

for substitution of the proceeds for the original collateral and treatment of the creditor's lien as a

lien on the proceeds instead of as a lien on the original collateral.  Because the plan itself would

provide for the sale, the sale would necessarily occur at or after confirmation.  In such a

scenario, the secured claim is necessarily valued as of the date of sale, because the sale itself

quantifies the claim by converting the lien from one on the original collateral to one on the

proceeds.  Section 1129(b)(2)(A)(ii) defines this treatment of a secured claim as fair and

equitable and, in doing so, establishes it as an equivalent alternative to the treatment permitted

in clause (i) of the same subsection, § 1129(b)(2)(A)(i).  It follows that Congress must have

contemplated that the value of a secured claim would, for purposes of § 1129(b)(2)(A), including

clause (i) thereof, be determined as of the date of confirmation.

　　　　The same conclusion is bolstered by language in § 1129(b)(2)(A)(i) itself, specifically its

requirement that the payments given for an allowed secured claim must have a certain present

value "as of the effective date of the plan."  As was explained above, this language does not

specify the date of valuation of the secured claim, only the date as of which the payments given

in satisfaction of the secured claim must have a present value equal to the secured claim.

Nonetheless, in doing so, this language seems to indicate an intent to assure that a secured

creditor receives such value as it would receive if the collateral (up to the value of the secured

claim) were simply handed over to the secured creditor on the effective date of confirmation.

Had Congress intended to guarantee to secured creditors the value of their secured claims as

------------------------

　　　　　　　　　　(ii) for the sale, subject to section 363(k) of this title, of any
　　　　　　　　　　property that is subject to the liens securing such claims,
　　　　　　　　　　free and clear of such liens, with such liens to attach to the
　　　　　　　　　　proceeds of such sale, and the treatment of such liens on
　　　　　　　　　　proceeds under clause (i) or (iii) of this subparagraph[.]

11 U.S.C. § 1129(b)(2)(A)(ii).

of the commencement of the case, Congress would likely (albeit not necessarily) have written this clause to require that the stream of deferred payments have the required present value "as of the date of the bankruptcy petition."  For these reasons—and more the former than the latter—the court is satisfied that Congress intended that the value of a secured claim would, for purposes of § 1129(b)(2)(A)(i), be determined as of the date of confirmation.

In doing so, the court is mindful that, by making adequate protection available to secured creditors through § 361 of the Bankruptcy Code, 11 U.S.C. § 361, Congress has shown an intent to protect the value of a secured creditor's interest in its collateral from deterioration from the very commencement of the case.  By the same token, however, it is clear that the mechanism for obtaining such protection is a motion for adequate protection.  The availability of adequate protection is not cause to construe § 1129(b)(2)(A)(i) as requiring valuation of a secured claim as of the commencement of the case.  For purposes of plan confirmation, a secured claim is valued as of the date of confirmation.  Prior to that date, the value of the secured claim is prevented from erosion only by adequate protection, whether obtained consensually or by order of the court.  The confirmation process is not a vehicle for restoring to the secured creditor value that, for whatever reason, eroded between the commencement of the case and confirmation of the plan.

## 2.  **Date of Determination of Interest Rate**

The secured creditors also object to confirmation on the basis that the five percent interest rate that the debtors use to amortize their secured claims is lower than the rate that would have applied at the commencement of the case, the date as of which, according to the secured creditors, the factors determining the amortization rate should properly be taken.  The debtors disagree and contend that they appropriately applied the rate appropriate to the confirmation date.

Here the parties are arguing about the interest rate necessary for a stream of payments to have, as § 1129(b)(2)(A)(i)(II) mandates, a present value as of the effective date of confirmation of the secured creditor's interest in the estate's interest in the collateral.  The commonly used method of determining this rate—the method the debtors apparently used and which this court would use here were the rate itself in issue—is known as the "formula" or "prime plus" approach,[10] which begins with a base rate, usually the prime rate, and then adds to it a premium appropriate to the risk of default.  The objecting secured creditors contend that the appropriate variables—prime rate and risk adjustment—should be those that prevailed at the commencement of the case.  The debtors argue that the appropriate point of reference is the time of confirmation.

The court agrees with the debtors.  The stream of payments promised under § 1129(b)(2)(A)(i)(II) must have a certain present value "as of the effective date of the plan."  11 U.S.C. § 1129(b)(2)(A)(i)(II).  A "cram down" under subsection § 1129(b)(2)(A)(i) thus effectuates something akin to a forced loan, the date of which is the effective date of confirmation.  The court sees no reason—and the secured creditors have articulated none—why that date should not be the date as of which both the base rate and the risk premium should be determined.  And the court would so hold even if the date the secured claim were appropriately valued as of the commencement of the case.  The date that the "loan" is made and the risk undertaken should govern.  As the secured creditors do not dispute that the interest rate proposed in the plan is appropriate to the effective date of confirmation, their objection to the interest rate is therefore overruled.

---

[10] See *Till v. SCS Credit Corp.*, 541 U.S. 465, 478-481, 124 S.Ct. 1951, 1961-1962 (2004).

**<u>CONCLUSION</u>**

For the reasons set forth above, the secured creditors objections are overruled, and a

separate order will enter confirming the plan

Date: November 30, 2009

_____
Frank J. Bailey
United States Bankruptcy Judge